UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Paul Blackmer

   v.                                        Civil No. 11-cv-079-SM

Paul Fortier et al.

### REPORT AND RECOMMENDATION

    Before the Court is pro se prisoner Paul Blackmer's complaint (doc. no. 1), and addenda thereto (doc. nos. 4 and 10), which collectively shall be considered to constitute the complaint in this action.  Defendants are all New Hampshire Department of Corrections ("DOC") staff and supervisors: Northern New Hampshire Correctional Facility ("NCF") Hearings Officer Paul Fortier; NCF Lt. Gagnon and Corrections Officers Meyer, Morin, and Lambertson, whose first names are unknown ("FNU"); former NCF Warden Larry Blaisdell; FNU Matson, who is a New Hampshire State Prison ("NHSP") staff member responsible for classifications; and DOC Commissioner William Wrenn.  The matter is before the court for preliminary review to determine if Blackmer has stated a claim upon which relief can be granted. See 28 U.S.C. § 1915A; United States District Court, District of New Hampshire Local Rule ("LR") 4.3(d)(2) (inmate complaints and

amendments are forwarded to the magistrate judge for preliminary review).

Also pending at this time is Blackmer's "Motion for Assistance of the Court" (doc. no. 12), in which Blackmer has requested clarification of this court's May 2011 Order (doc. no. 2) and an appointment of counsel to help him serve process. In an order issued this date, the court has ruled on that motion.

I.  Preliminary Review

    A.  Standard of Review

Under LR 4.3(d)(2), when an incarcerated plaintiff commences an action pro se, the magistrate judge conducts a preliminary review. The magistrate judge may issue a report and recommendation after the initial review, recommending that claims be dismissed if: the court lacks subject matter jurisdiction, the defendant is immune from the relief sought, the complaint fails to state a claim upon which relief may be granted, the allegation of poverty is untrue, or the action is frivolous or malicious. See id. (citing 28 U.S.C. § 1915A and Fed. R. Civ. P. 12(b)(1)). In conducting a preliminary review, the magistrate judge construes pro se pleadings liberally, to avoid inappropriately stringent rules and unnecessary dismissals. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976),

to construe pleadings liberally in favor of pro se party); Castro v. United States, 540 U.S. 375, 381 (2003).

To determine if a complaint states any claim upon which relief could be granted, the court applies a standard analogous to that used in reviewing a motion to dismiss filed under Fed. R. Civ. P. 12(b)(6). The court decides whether the complaint contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. See Ashcroft v. Iqbal, 556 U.S. 662, ___, 129 S. Ct. 1937, 1949 (2009).

To make this determination, the court employs a two-pronged approach. See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011). The court first screens the complaint for statements that "merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action." Id. (citations, internal quotation marks and alterations omitted). A claim consisting of little more than "allegations that merely parrot the elements of the cause of action" may be dismissed. Id. The second part of the test requires the court to credit as true all non-conclusory factual allegations and the reasonable inferences drawn from those allegations, and then to determine if the claim is plausible. Id. The plausibility requirement "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of illegal

conduct. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007). The "make-or-break standard" is that those allegations and inferences, taken as true, "must state a plausible, not a merely conceivable, case for relief." Sepúlveda-Villarini v. Dep't of Educ., 628 F.3d 25, 29 (1st Cir. 2010); see Twombly, 550 U.S. at 555-56 ("Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." (citations and footnote omitted)).

Evaluating the plausibility of a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at ___, 129 S. Ct. at 1950 (citation omitted). In doing so, the court may not disregard properly pleaded factual allegations or "attempt to forecast a plaintiff's likelihood of success on the merits." Ocasio-Hernández, 640 F.3d at 13. "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." Id.

B.  Background

    1.  Inmate Account, Hygiene Items, and Court Access

Blackmer is a prisoner at NCF, who, while incarcerated, has been a frequent litigant.[1] The NCF charges prisoners for photocopies, including copies of legal work.

Blackmer's inmate account is depleted. Blackmer asserts that he has been unable to purchase items from the canteen since December 2008, including stamps, envelopes, writing paper, and hygiene items, because of the copy charges that he has incurred.

---

[1] Blackmer has filed more than ten lawsuits in this court while incarcerated. While the court makes no finding on the issue at this time, the court notes that Blackmer's ability to proceed in forma pauperis in the federal courts in cases filed in the future may be limited to claims asserting an imminent danger of serious physical injury, pursuant to 28 U.S.C. § 1915(g), given his litigation history. See generally Silva v. DiVittorio, 658 F.3d 1090, 1098-1101 (9th Cir. 2011); Michaud v. City of Rochester, 248 F.3d 1127 (unpublished table decision), 2000 WL 1886289, *2 n.1 (1st Cir. Dec. 27, 2000) (dismissals by district court for purposes of § 1915(g) "should not be counted until after a petitioner has exhausted or waived his avenues of appeal" (citing Adepegba v. Hammons, 103 F.3d 383, 387-88 (5th Cir. 1996))). In the last three years, this court has dismissed more than three of Blackmer's cases on grounds that the complaint failed to state a claim upon which relief could be granted. See, e.g., Blackmer v. U.S. Social Sec. Admin., No. 10-CV-133-SM (D.N.H. May 17, 2010), aff'd, No. 10-1749 (1st Cir. Mar. 4, 2011), cert. denied, No. 11-6616, 2011 WL 5902507 (U.S. Nov. 28, 2011); Blackmer v. U.S. Dep't of Justice, No. 10-CV-124-SM, 2010 WL 3608336 (D.N.H. Sept. 10, 2010), aff'd, No. 10-2159 (1st Cir. June 2, 2011), No. 11A381 (U.S. Oct. 18, 2011) (extending time for filing certiorari petition); Blackmer v. Vinson, No. 10-cv-14-SM, 2010 WL 4140861 (D.N.H. Oct. 21, 2010), aff'd, No. 10-2387 (1st Cir. July 7, 2011); Blackmer v. Sweat, 08-cv-292-SM, 2008 WL 5120680 (D.N.H. Dec. 3, 2008), aff'd, No. 08-2555 (1st Cir. Oct. 5, 2009), cert. denied, 131 S. Ct. 421 (2010).

Additionally, Blackmer asserts that since January 2010 the DOC has taken all available funds from his inmate account to pay, on an incremental basis, his outstanding copy charges, and has refused to provide Blackmer with access to a photocopier for duplicating his legal work.

> 2. Disciplinary Charge and Tape of Hearing

In August 2008, while addressing Lt. Gagnon, an NCF prison guard, Blackmer refused to use the term, "lieutenant," when ordered to do so. Prison officials charged Blackmer with a disciplinary offense for that refusal. After a hearing held in August or September 2008, NCF Hearings Officer Paul Fortier found Blackmer guilty and directed his transfer to prison units that imposed restrictions upon Blackmer. The guilty finding also resulted in Blackmer's reclassification to a higher security status.

Before the disciplinary hearing, Blackmer had provided defendant Fortier with a blank cassette tape, so that Fortier would record the hearing. When Blackmer asked for a copy of the recording, Fortier and Warden Larry Blaisdell demanded that he pay $5.00 for it. Blackmer has asserted that he lacks sufficient funds in his inmate account to pay that fee.

C.  Claims

The complaint and addenda (doc. nos. 1, 4 and 10) assert the following claims, pursuant to 42 U.S.C. § 1983[2]:

    1.  Defendants are liable under 42 U.S.C. § 1983: (a) for violating Blackmer's First Amendment right not to be compelled to speak, in ordering Blackmer to say, "lieutenant," when speaking with Lt. Gagnon; and (b) for retaliating against Blackmer by transferring him to units imposing more restrictive conditions and reclassifying him to a higher security status for refusing to comply with the order concerning the way to address Lt. Gagnon.

    2.  Defendants Blaisdell and Fortier are liable to Blackmer for violating Blackmer's Fourteenth Amendment right to due process by first requiring Blackmer to provide Fortier with a cassette tape, so that Fortier would make a recording of a disciplinary hearing, then demanding $5.00 if Blackmer wanted to receive that recording.

    3.  Defendants have violated Blackmer's federal constitutional right to have access to the courts by denying him: (a) the ability to photocopy his legal work since January 2010; (b) the ability to purchase stationery and stamps from the canteen, due to the low balance in his inmate account; and (c) access to a tape recording of a 2008 disciplinary hearing.

    4.  Blackmer has been subjected to unconstitutional conditions of confinement, in violation of his rights under the Eighth Amendment, in that, since December 2008, he has been unable to purchase soap and other hygiene items from the canteen because of the low balance in his inmate account.

---

[2] The claims identified herein shall be deemed to be the claims raised in the complaint (doc. nos. 1, 4, and 10), for all purposes in this case.  If Blackmer disagrees with this identification of his claims, he must file an objection to this report and recommendation, or properly file a motion to amend the complaint.

7

5. Blackmer's state convictions were obtained in violation of his federal constitutional rights.

## Discussion

I. Preliminary Review

    A. Compelled Use of Term "Lieutenant"

Blackmer has asserted that prison officials violated his federal constitutional rights, including his right not to suffer retaliation for exercising his First Amendment right not to have the government tell him what to say, when he refused to comply with an order that he address Lt. Gagnon as "lieutenant," and when he was transferred to a more restrictive prison unit and reclassified for refusing to do so. Blackmer's claim of retaliation is premised on his assertion that his First Amendment right not to be compelled to speak was violated when he was ordered to address Lt. Gagnon using his rank and title in the prison corrections system.[3]

"[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with

---

[3] Blackmer has also asserted that defendants violated Article I, Sections 9 and 10, of the U.S. Constitution by requiring that he use a "militaristic title" in addressing Lt. Gagnon. Section 9 prohibits the federal government from granting any person a title of nobility. Section 10 prohibits the states from doing the same and also prohibits states from keeping troops in time of peace. The facts alleged in the complaint fail to state any claim based on those constitutional provisions. To the extent Blackmer has intended to state such a claim, the claim should be dismissed as frivolous.

the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974). Certain types of speech are always subject to government regulation, including fighting words and obscenity, both inside and outside of the prison context:

> From 1791 to the present . . . our society, like other free but civilized societies, has permitted restrictions upon the content of speech in a few limited areas, which are "of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality." We have recognized that "the freedom of speech" referred to by the First Amendment does not include a freedom to disregard these traditional limitations.

R.A.V. v. City of St. Paul, 505 U.S. 377, 382-83 (1992) (citations omitted).

Within the prison walls, the legitimate interests of prison officials in institutional security and other legitimate penological goals of the corrections system may justify more extensive regulations affecting speech. The Supreme Court has "urged lower courts to exercise restraint and give appropriate deference to the expert judgments of prison administrators" in evaluating prison policies that allegedly burden federal rights, including First Amendment rights. Starr v. Coulombe, 2009 WL 224968, at *4 (D.N.H. Jan. 29, 2009), aff'd, 368 Fed. App'x 156 (1st Cir. 2010). Prison regulations burdening inmate constitutional rights pass muster if they are "reasonably

9

related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987).

A court, in evaluating whether or not a particular prison regulation is constitutional, considers four factors: (1) whether the regulation has a "valid, rational connection" to a legitimate penological objective, (2) "whether alternative means are open to inmates to exercise the asserted right," (3) "what impact an accommodation of the right would have on guards and inmates and prison resources," and (4) "whether there are 'ready alternatives' to the regulation." Overton v. Bazzetta, 539 U.S. 126, 132 (2003) (citing Turner, 482 U.S. at 89-91). The burden is on the prisoner to disprove the validity of prison regulations. See Overton, 539 U.S. at 132.

As to the first factor, the policy of requiring an inmate to address a corrections officer by his or her rank is related to a legitimate penological interest in prison safety and security, in that it helps ensure that inmates and staff interact in a courteous, professional manner. As to the second factor, the policy does not require inmates to speak with officers and does not govern other forms of inmate communications. As to the third factor, the court notes that an appearance of undue familiarity, favoritism, or friction between or among inmates and staff could result if an inmate addressed a

guard either informally or disrespectfully, and such issues could undermine institutional security and require additional resource expenditures. Finally, no ready alternative to the policy at issue is suggested by the facts alleged. Therefore, Blackmer has failed to show that an order requiring him to address a prison guard by rank and title violated his First Amendment rights.

By the same token, Blackmer's retaliation claim fails, as it is premised on Blackmer being punished for exercising a First Amendment right. See Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011) (elements of retaliation claim). Here, Blackmer's failure to use the term, "lieutenant," when ordered to do so did not constitute conduct protected by the First Amendment. Accordingly, the retaliation claim should be dismissed.

    C.    Retention of Cassette Tape

Blackmer has asserted that he gave defendant Fortier a cassette tape to record the 2008 disciplinary hearing, and that prison officials have violated his right to due process by demanding that he pay $5.00 to receive that recording. Blackmer's claim is in the nature of a substantive due process claim.

"The constitutional guarantee of substantive due process 'functions to protect individuals from particularly offensive

11

actions on the part of government officials.'" Gonzalez-Droz v. Gonzalez-Colon, 660 F.3d 1, 15-16 (1st Cir. 2011) (citation omitted). "The plaintiff bears the burden of showing that the challenged actions were 'so egregious as to shock the conscience. To sink to this level, the challenged conduct must be 'truly outrageous, uncivilized, and intolerable.'" Id. at 16 (citations omitted).

Here, Blackmer has alleged that the fee charged by defendants exceeds an amount he can afford to pay. As explained more fully below, Blackmer has not shown, however, that he requires access to the recording in order to litigate any viable claim, or to avoid unconstitutional interference with his access to the courts. Blackmer has also failed to show that the imposition of a fee for making a recording of a hearing is so odious, uncivilized, or intolerable as to shock the conscience. Accordingly, the court should dismiss the substantive due process claim based on defendants' demand that Blackmer pay a fee to receive a tape recording of a disciplinary hearing.

### D. Access to the Courts

Blackmer has alleged that defendants have violated his right to have access to the courts by charging him an unaffordable fee for a recording of the 2008 disciplinary hearing and by requiring him to pay sums he cannot afford if he

wants to purchase writing paper, stamps, and envelopes. "[P]risoners have a constitutional right of access to the courts," Bounds v. Smith, 430 U.S. 817, 821 (1977), but they are not entitled to unlimited litigation resources. See Lewis v. Casey, 518 U.S. 343, 354-55 (1996).

To state a claim for a denial of access to the courts, an inmate must show, among other things, actual injury with respect to a nonfrivolous clam, such that the deprivation of resources hindered the plaintiff's ability to pursue such a claim. See id. at 349-52. The inmate must show "that an actionable claim has been lost or rejected or that presentation of the claim is currently being prevented." Guglielmo v. N.H. State Prison, 111 F.3d 122, 1 (1st Cir. 1997) (unpublished table decision) (citing Lewis, 518 U.S. at 356).

    1.   <u>Stationery and Stamps</u>

As to his lack of access to stamps and stationery, Blackmer has failed to allege facts in the complaint showing how any limitations on his access to such resources has actually hindered his ability to litigate any claim. Indeed, Blackmer has filed claims in this court within the last several years, notwithstanding the limitations on his access to certain resources. Accordingly, the court should dismiss the claim asserting that Blackmer has suffered a deprivation of his right

13

to access the courts, as a result of his inability to purchase stamps, writing paper, and envelopes from the canteen.

### 2. Recording of Disciplinary Hearing

Similarly, Blackmer has not shown that his lack of access to a tape recording of the 2008 disciplinary hearing has caused him actual injury as to any claim that he is entitled to litigate. Blackmer was in attendance at the hearing in question, and may be presumed to be generally aware of the issues captured by a tape recording that might be deemed to violate his federal rights, even if he lacks ready access to the tape at this time. Blackmer, however, has cited only the First Amendment and Article I, Sections 9 and 10 (among other things, prohibiting states and the United States from granting titles of nobility) as the source of rights violated in connection with that hearing. For reasons stated above, the court should find that the Constitution does not guarantee to an inmate the right to speak to a prison guard without using his rank and title in the corrections system when ordered to do so. Blackmer has not shown how his ability to obtain a copy of a recording of the hearing would alter this court's recommendation regarding the dismissal of those claims. Therefore, the access to the courts claim should be dismissed.

E.  Remaining Claims

Blackmer's remaining claims include another access to the courts claim, premised on his inability to make photocopies of legal work, as well as claims arising from his inability to purchase hygiene items from the canteen, and claims that his incarceration is illegal.  Blackmer asserted essentially the same claims against a different set of defendants in Blackmer v. Vinson, No. 10-CV-14-SM.  In that action, the district court dismissed the complaint for failing to state a claim, and the First Circuit affirmed that disposition.  See id., 2010 WL 4140861 (D.N.H. Oct. 21, 2010) (doc. no. 17) (dismissing case), aff'd, No. 10-2387 (1st Cir. July 7, 2011).[4]

1.  Photocopy Claim

As to the merits of Blackmer's access to the courts claim, based on his inability to use a photocopier, Blackmer has asserted that the lack of access to a copier prevents him from serving opposing counsel.  That assertion, however, does not

---

[4]To the extent Blackmer is attempting to state claims here based on the facts previously found by this court to be insufficient to state a claim under section 1983, Blackmer is collaterally estopped from doing so.  See Rodriguez-Garcia v. Miranda-Marin, 610 F.3d 756, 770 (1st Cir. 2010) (collateral estoppel may be applied where same issue was actually litigated and determined by valid and binding final judgment in an earlier action, and determination of that issue was essential to earlier judgment).

amount to a showing that his litigation of a claim has been hindered.  Blackmer has failed to show that his inability to duplicate any document has resulted in the dismissal of any claim, or has otherwise negatively impacted his litigation position in any case, in a manner that would constitute actual injury.  Accordingly, Blackmer has failed to make the requisite showing of actual injury, and the claim should be dismissed.

      2.   <u>Hygiene Items</u>

As to Blackmer's claim that deductions from his inmate account have rendered him unable to purchase hygiene items since December 2008, Blackmer has failed to show that he has been subjected to conditions of confinement that violate his Eighth Amendment rights.  As noted in <u>Blackmer v. Vinson</u>, hygiene items may be available from other sources, and Blackmer has not suggested that he has been denied access to free supplies that may be available to indigent prisoners.  <u>See</u> <u>id.</u>, 2010 WL 2583148, *4 (D.N.H. June 21, 2010) (doc. no. 10) (Report and Recommendation, citing <u>Sellers v. Worholtz</u>, 86 Fed. Appx. 398, 400 (10th Cir. 2004) (dismissing claim of Eighth Amendment violation, challenging prison's deduction of fees from inmate account that precluded inmate from using account to purchase hygiene products, because prisoner failed to allege that he had been denied free "indigent package" of hygiene supplies)).

16

3. Illegality of Convictions

Blackmer's claims regarding the illegality of his convictions are barred by the Heck doctrine, as described more fully in the Report and Recommendation issued in Blackmer v. Vinson, 2010 WL 2583148, *4 (D.N.H. June 21, 2010) (Report and Recommendation (doc. no. 10), citing Heck v. Humphrey, 512 U.S. 477, 486-87 (1994)). Thus, each of the remaining claims in the complaint should be dismissed.

**Conclusion**

For the foregoing reasons, the complaint (doc. nos. 1, 4, and 10) should be dismissed for failure to state a claim upon which relief can be granted. Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). Failure to file objections within the specified time waives the right to appeal the district court's order. See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011) (citing United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008)); Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by objections to magistrate judge's

report are subject to review by district court; issues not preserved by such objection are precluded on appeal).

_____
Landya McCafferty
United States Magistrate Judge

December 13, 2011

cc: Paul Blackmer, pro se

LBM:nmd